UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONITA J. STUBBS, on behalf of plaintiff and a class, ) ) ) Plaintiff, ) ) v. ) ) CAVALRY SPV I, LLC and ) CAVALRY PORTFOLIO SERVICES, ) LLC, ) ) Defendants. ) | Case No. 12-cv-7235 Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donita J. Stubbs brought this class action against Cavalry SPV I, LLC ("Cavalry SPV") and Cavalry Portfolio Services, LLC ("CPS") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*, and the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/9. Plaintiff has moved, pursuant to Federal Rule of Civil Procedure 23, for class certification. For the reasons stated below, the Renewed Motion for Class Certification [114] is granted in part and denied in part.

### BACKGROUND

The following is taken from the Amended Complaint, exhibits, and briefs submitted by the parties. CPS is a limited liability company chartered under Delaware law. (Sec. Am. Compl. ¶ 6.) CPS and Cavalry SPV are affiliates. (*Id.* ¶ 17.) Defendants sought to collect from Plaintiff an alleged balance on a defaulted credit card account, the account number ending in 3219. (*Id.* ¶¶ 18, 19.) At some point, Plaintiff stopped making payments; and the account went into default. (*Id.* ¶ 9.) The account was charged-off by the original creditor, Bank of America ("BOA"), in August 2009. (*Id.* ¶ 20). The debt Defendants sought to collect was a credit card issued by BOA

or its wholly-owned credit card issuing subsidiary, FIA Card Services, N.A. ("FIA"). (*Id.* ¶ 36.) Sometime after January 15, 2010, Plaintiff received a letter from a debt collection agency, FMA Alliance, Ltd., seeking to collect, on behalf of BOA, her allegedly defaulted credit card account. (*Id.* ¶ 19.) The amount to be collected was $4,504.65. (*Id.*)

BOA subsequently sold Plaintiff's account to Cavalry SPV on August 23, 2011. (*Id.* ¶ 23.) In the agreement between BOA and Cavalry SPV, BOA provides that the loans are sold "as is" and without:

> any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning or with respect to the following: (a) the marketability, value, quality or condition of any loan or loans; (b) the validity, enforceability or collectability of the evidence of indebtedness; . . . (d) the accuracy or completeness of any information provided by the seller to the buyer, including without limitation, the accuracy of any sums shown as current balance or accrued interest amounts due under the loans; and (e) any other matters pertaining to the loans.

(SAC, Exh. G.)

Plaintiff received three collection letters seeking, on behalf of CPS, to collect on the account in the amount of $6,322.87. (SAC ¶¶ 29-31.) Cavalry SPV filed suit against Plaintiff to collect the account on March 16, 2012. (*Id.* ¶ 32.) Cavalry SPV included interest for the period between the charge-off date and the date BOA sold the account to Cavalry SPV. (*Id.* ¶ 28). Attached to the state court collection suit was an "Affidavit of Claim" executed by Stephanie Cappelli, an employee of Cavalry SPV. (*Id.* ¶¶ 34-35.) The affidavit stated:

> a. "I am an agent and duly authorized representative for Plaintiff and am competent to testify to the matter set forth herein."
> b. "As of 12/5/2011, the balance due and owing by the account holder(s) on the account was $6,539.98, which balance is comprised of $4,504.65 of principal balance and $2,035.33 +$0 + $0 of other charges."
> c. "In the normal course of business, Cavalry Portfolio Services, LLC maintains computerized account records for account holders. Cavalry Portfolio Services,

> LLC maintains such records in the ordinary and routine course of business and is charged with the duty to accurately record any business act, condition or event onto the computer record maintained for the accounts, with the entries made at or very near the time of any such occurrence . . . ."
> d. "In connection with the purchase of the account, Bank of America/FIA Card Services, N.A. transferred copies of its electronic business records to Cavalry SPV I, LLC, which records were loaded into the computer system of Cavalry Portfolio Services, LLC and which are maintained in an electronic format."

(SAC ¶ 37.) The affidavit represented that the "principal balance continues to accrue interest as of the 12/5/2011 at a rate of 19.99%." (SAC, Exh. F.) The affidavit states, "I am informed and believe the above statements are true and correct." (*Id.*)

Plaintiff seeks statutory damages, actual damages, and fees and costs. Plaintiff also seeks a declaration that Defendants may not add interest for a period prior to their ownership of the debt and an injunction forbidding Defendants from seeking such interest or reporting that interest to credit bureaus.

## LEGAL STANDARD

A plaintiff seeking class certification must show the proposed class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. First, under Rule 23(a), the plaintiff must satisfy the following four prerequisites: (1) joinder of all potential class members is impracticable ("numerosity"); (2) there are common questions of law or fact ("commonality"); (3) the claims or defenses of the representative parties are typical of the rest of the class ("typicality"); and (4) the class representative adequately and fairly represents the class ("adequacy"). Fed. R. Civ. P. 23(a); *see also Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 892-93 (7th Cir. 2012). Second, the plaintiff must also satisfy at least one subsection of Rule 23(b). Rule 23(b)(3), the subsection argued by Plaintiff in this case, permits certification of a class where "questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods for fairly and adequately adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Failing to fulfill Rule 23(a) or 23(b) bars certification, but fulfilling both categorically entitles certification. *Shady Grove Orthopedic Assocs.*, 559 U.S. 398.

Rule 23 "does not set forth a mere pleading standard"; rather, the plaintiff "must affirmatively demonstrate his compliance with the Rule [and] be prepared to prove" its requirements. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). A plaintiff bears the burden of showing that a proposed class satisfies the Rule 23 requirements by a preponderance of evidence. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). In deciding whether Rule 23 has been satisfied, the district court undertakes "a rigorous analysis," making the necessary factual and legal inquiries. *Id.*; *see also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). A plaintiff who fulfills both conditions of Rule 23 is entitled to certification. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.").

## ANALYSIS

Plaintiff seeks to certify the following classes:

1) Class I (Count I - FDCPA count): (a) All natural persons with Illinois addresses (b) to whom one or both of the defendants provided an affidavit in the form represented by Exhibit B to the Second Amended Complaint, representing that the affiant is authorized to make the affidavit and is informed and believes that the statements in the affidavit are true and correct (c) concerning a debt that was the subject of an 'as is' disclaimer in the agreement for its acquisition (d) on or after September 11, 2011, and (e) on or before October 1, 2012 (f) where FIA Card Services was the originator of the debt.

2) Class II (Count II - FDCPA count): (a) All individuals (b) to whose alleged debt Cavalry SPV or CPS added interest for a period prior to the alleged

4

ownership of the debt by Cavalry SPV that had not been added by the holder of the debt at that time (c) where any document adding such interest was sent or delivered to the individual at any time during a period beginning on June 17, 2012 and ending July 7, 2013 and (d) where FIA Card Services was the originator of the debt.

3) Class III (Count III - ICAA count): (a) All individuals with Illinois addresses (b) to whose alleged debt Cavalry SPV or CPS added interest for a period prior to the alleged ownership of the debt by Cavalry SPV that had not been added by the holder of the debt at that time (c) where any document adding such interest was sent or delivered to the individual at any time during a period beginning on June 17, 2008 and ending July 7, 2013 and (d) where FIA Card Services was the originator of the debt.

4) Class IV (Count IV - Declaratory Judgment and Injunctive Relief): Class IV: (a) All individuals (b) to whose alleged debt Cavalry SPV or CPS added interest for a period prior to the alleged ownership of the debt by Cavalry SPV that had not been added by the holder of the debt at that time (c) where FIA Card Services was the originator of the debt.

(Dkt. No. 228, Pl's. Renewed Mot. for Class Cert. at 1-2.) Plaintiff argues that the proposed classes satisfy the requirements of Rules 23(a) and 23(b)(3).

## Retroactive Interest

Proposed classes II, III, and IV involve the addition of interest for a period prior to ownership of the debt by Cavalry SPV. Plaintiff alleges that Defendants improperly added unauthorized interest to her debt in violation of the FDCPA and ICAA. Specifically, Plaintiff alleges that Defendants illegally added interest to debts where that interest was previously waived by the debt issuer. Proposed class II involves claims that adding such interest violates the FDCPA. Proposed class III involves claims that adding such interest violates the ICAA. Proposed class IV requests a declaratory judgment that Defendants alleged addition of waived interest is unlawful and an injunction preventing Defendants from continuing that conduct. The FDCPA specifically provides for class actions. *See* 15 U.S.C. § 1692k(a)(2)(B).

*Rule 23(a)*

<u>Numerosity</u>

For numerosity, the proposed class must be so large that joinder of all members of the class is impracticable. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Although a plaintiff cannot rely on conclusory allegations or speculation as to class size, numerosity problems can be resolved subsequent to class certification. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). "Generally, where class members number at least 40, joinder is considered impracticable and numerosity is satisfied." *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008) (citing *Ringswald v. County of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000); *Swanson v. American Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1969)). A finding of numerosity can be based on common sense assumptions. *In re VMS Securities Litigation*, 136 F.R.D. 466, 473 (N.D. Ill. 1991).

Defendants argue that Plaintiff has not established that there are at least 40 people from whom Defendants sought to collect contractual interest or interest that had been waived by BOA. However, Defendants did admit that SPV included interest for a time period prior to its acquisition of the account for more than 100 individuals. (Dkt. 229-1, p. 88). And Defendants admitted that there are more than 40 such individuals with Illinois addresses. (*Id.*). Whether Plaintiff can find 40 or more people with successful claims is not the pertinent question for class certification. *See Payton v. Cnty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) ( "a determination of the propriety of class certification should not turn on likelihood of success on the merits"). Plaintiff has sufficiently shown numerosity.

## Commonality

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This means that the plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores*, 131 S.Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Commonality is usually satisfied by "[a] common nucleus of operative fact." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Claims arising from standardized conduct towards members of the proposed class usually state a case for treatment as a class action. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citing *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D. Ga. 1983)). Defendants argue that there are no common facts among putative class members because each claim is based upon an independent factual inquiry. However, some factual variation does not defeat a class action. *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Plaintiff has alleged, and Defendants have admitted, that Defendants imposed interest after the debt issuer charged-off the credit card accounts of the alleged class members. Plaintiff has demonstrated a common nucleus of operative fact; that there is some factual variance does not defeat the class action under Rule 23(a).

## Typicality

The third requirement, typicality, requires that "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). "[T]here must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

However, typicality does not require identical claims, as "factual variations among class members' grievances do not defeat a class action." *Keele*, 149 F.3d at 594. Rather, "'a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Id.* at 595 (quoting *De La Fuente*, 713 F.2d at 232). Again, Plaintiff has alleged that Defendants imposed interest after the debt issuer charged-off the credit card accounts. Plaintiff has demonstrated that the same practice gives rise to the claims of other class members.

<u>Adequacy of Representation</u>

Courts in this district examine three factors to determine whether Plaintiff is an adequate class representative: (1) whether the class representative has conflicting or antagonistic interests compared with the class as a whole; (2) whether the class representative is sufficiently interested in the outcome, to ensure vigorous advocacy; and (3) whether class counsel is experienced, competent and qualified. *See Oplchenski*, 254 F.R.D. at 498. Defendants do not challenge the experience, competence, or qualifications of Plaintiff's counsel. Defendants do allege that Plaintiff has conflicting or adverse interests to the proposed classes. Specifically, Defendants claim that Plaintiff's allegedly speculative damages are antagonistic to putative class members whose damages may be different. However, varying damages do not defeat a class certification. *See Keele*, 149 F.3d at 593 ("The damages recoverable for the class members' injuries may differ − some may be eligible for both actual and statutory damages, others actual damages only, and still others just statutory relief − but the fact remains that their injuries are the same.").

Defendants' purported supporting cases are inapposite. In *Radcliffe v. Experian Information Solutions Inc.*, the district court's approval of the settlement was an abuse of discretion where the settlement agreement contained conditional incentive awards for the class

representative. *See Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). *In re Dry Max Pampers Ligitation* involved a settlement class that accepted an award, while the rest of the class received nothing. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013). A class representative's interests are antagonistic when they necessarily go against the interests of the class. *See Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 698 (7th Cir. 1986) ("For every dollar that is expended or paid out from the Teamster's pension fund on benefits for the eligible members of the benefit group, there will be one less dollar available to provide benefits for the asset mismanagement group, which is an obvious conflict of interest."). Defendants do not argue that any award to the class representative would necessarily harm the absent class members, and there is no reason to believe that would occur.

Defendants also contend that Plaintiff is an inadequate class representative because she has little knowledge of her claims. However, "the class representative's role is limited." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.*, 657 F.2d 890, 896 (7th Cir. 1981). Class certification was not defeated where "the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants." *Id.* (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, (1966)). The role of a class representative is nominal, and the representative usually receives "modest compensation . . . for what usually are minimal services in the class action suit." *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080 (7th Cir. 2013). Plaintiff has shown that she is an adequate class representative.

*Rule 23(b)(3) - Predominance and Superiority*

Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (1997). Commonality can be outweighed by additional, significant questions unique to individual class members. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir.2014) (quoting *Amchem*, 521 U.S. at 623). A plaintiff must show that the issues common to the class outweigh any individual issues. *Parko*, 739 F.3d at 1085. If the members of a proposed class need to present evidence that varies from person to person to make a *prima facie* showing, then individual issues predominate; but if the same evidence serves for each member to make a *prima facie* showing, then common issues predominate. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (citing *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

Analysis of predominance under Rule 23(b)(3) "begins, of course, with the elements of the underlying cause of action." *Id.* (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)). For proposed classes II, III, and IV, Plaintiff claims Defendants violated the FDCPA by adding interest after that interest was waived by the original creditor. As previously determined, under Illinois choice-of-law provisions, Delaware law applies to the question of waiver. Under Delaware law, "[w]aiver implied from circumstances is a question of fact dependent upon the particular facts of the case, and it is usually for the jury to say whether the conduct of the party evidences a conscious and voluntary abandonment of some right or privilege." *Nathan Miller, Inc. v. N. Ins. Co. of New York*, 39 A.2d 23, 25 (Del. Super. 1944). Individual waiver considerations

outweigh the commonality between class members' claims. BOA may have taken different actions with each purported member of the class, requiring individualized implied-waiver analyses. Further, the determination that Delaware law applied was made through the interpretation of Illinois choice-of-law rules, as Plaintiff is located in Illinois. Other states may have different choice-of-law provision rules indicating their own law should apply. The proposed class II does not limit the members of the class to any particular state.

Plaintiff points to the grant of class certification in a similar, post-charge-off interest case, *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 524 (E.D. Mich. 2013). However, in *McDonald*, the contract between the credit card issuer and the debt collector specifically excluded post=charge-off interest and provided that the "primary purpose in purchasing Charged-off Account is to attempt legal collection of the Unpaid Balances owed on such Charged-off accounts." *McDonald*, 296 F.R.D. at 524. There is no similar, express-waiver provision in the contract between the credit card issuer and the debt collector here. And implied waiver is dependent upon the particular facts. Common issues do not predominate over individual issues for the retroactive interest claims. Therefore, class certification for proposed classes II, III, and IV is inappropriate under Rule 23(b).

### False Affidavit

The proposed class I involves the allegedly false Affidavits of Claim, as set out above, in lawsuits against individuals with Illinois addresses between September 11, 2011, and October 1, 2012, concerning a debt that was the subject of an "as is" disclaimer. The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Here, Plaintiff contends that the common question is whether the collection letters sent by Defendants to members of the

proposed class violate the FDCPA, because the affidavits supporting the collection letters falsely stated that the affiant had knowledge of the information contained within the affidavit. Specifically, Plaintiff argues that, since the debts were purchased by Defendants from BOA with an "as is" clause, Cappelli could not have had knowledge that the alleged debt amounts were correct. Plaintiff also argues that Cappelli did not have personal knowledge and information regarding BOA's and FIA's record systems and record keeping.

*Rule 23(a)*

Numerosity

A finding of numerosity can be based on common sense assumptions. *In re VMS Securities Litigation*, 136 F.R.D. at 473. Cappelli testified that she generated the allegedly false affidavit in the normal course of her business. Given the large numbers of suits against individuals with Illinois addresses during the time period alleged, it is common sense to assume that there are more than forty individuals who received similar affidavits. Plaintiff has sufficiently alleged numerosity for this class.

Commonality

Courts have held that sending allegedly illegal form letters to members of a proposed class satisfies commonality. *See, e.g., Keele*, 149 F.3d at 594 ("Common nuclei of fact are typically manifest where, like in the case *sub judice*, the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents."); *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 287 (N.D. Ill. 2005) ("Courts have consistently found there to be a common nucleus of operative fact where a class's claims arise out of standardized or form documents.") (collecting cases); *Moore v. Stellar Recovery, Inc.*, No. 13 C 2294, 2014 WL 3509729, at *2 (N.D. Ill. July 14, 2014) ("Such

conduct – sending letters or documents to members of the proposed class – provides a common nucleus of operative fact."). The same logic applies to allegedly false affidavits filed in collection actions. Furthermore, whether an affidavit was false, deceptive, or misleading, in violation of § 1692(e), is an objective test. *See Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012). Here, there are common questions of law and fact as to whether the affidavits at issue violated the FDCPA.

Defendants argue that this issue is similar to *Rosales v. Unifund CCR Partners*, 2008 WL 4976223 (N.D. Ill. Nov. 19, 2008). However, in *Rosales*, the affiant compiled the affidavits from both written and electronic sources. *Rosales*, 2008 WL 4976223 at *2. Here, the affidavits were generated electronically, and Cappelli checked the information against a database. Plaintiff has shown the same procedure was followed, and the requirement for commonality has been satisfied.

Typicality

In *Keele*, the Seventh Circuit held that typicality was satisfied where the named plaintiff received debt collection letters seeking a collection fee. The court noted that, by sending the collection letters, the Defendants engaged in "the same course of conduct" towards the plaintiff and the members of the proposed classes. *Keele*, 149 F.3d at 595. As in *Keele*, Defendants engaged in the "same course of conduct" towards Plaintiff and the proposed class members by sending them the collection letters at issue. Typicality is satisfied, and Plaintiff has met her burden with respect to Rule 23(a).

Adequacy of Representation

As discussed above, Plaintiff is an adequate class representative.

*Rule 23(b)(3) - Predominance and Superiority*

Under Rule 23(b)(3), a plaintiff must show that the issues common to the class outweigh any individual issues. *Parko*, 739 F.3d at1085. The claims at issue for this class concern whether the affidavits filed with collection actions against the proposed class members violate the FDCPA. Specifically, whether the affidavits falsely represent the character, amount, or legal status of any the proposed class members' debt and whether the affidavits were a false representation or deceptive means to collect or attempt to collect the debt. 15 U.S.C. §§ 1692e(2)(A), (10).

Defendants argue that common issues do not predominate because there is no false representation common to the class in the affidavit. Defendants further claim that the proposed class would require an investigation into whether Cappelli checked all the information for each class member's account. Plaintiff argues that the "as is" disclaimer in the contract between BOA and Cavalry, among other things, makes personal knowledge of the contents of the affidavit impossible. "If the standardized process of affiants signing affidavits with no personal knowledge of underlying accounts is found to violate the FDCPA, recipients of such affidavits may prevail regardless of the other details of their accounts." *Casso v. LVNV Funding, LLC*, No. 12-CV-7328, 2014 WL 7005032, at *3 (N.D. Ill. Dec. 10, 2014). Plaintiff has alleged that Cappelli had no personal knowledge of the underlying accounts. She also argues that, while Cappelli may have reviewed some documents, Cappelli had no knowledge of whether those documents, transferred from BOA, were accurate due to the disclaimer contained in the loan sale agreement.[1] Plaintiff has alleged and argued that due to the "as-is" disclaimer, Defendants had

---

[1] Plaintiff further argues that the contents of the affidavit would not be admissible at a trial to collect the debt and interest as implied in the affidavit because Cappelli is not a sufficient

no ability to actually prove the underlying debt. Therefore, an affidavit purporting that Defendants could, and would, prove the underlying debt in a collection action was a false representation or deceptive means to attempt to collect the alleged debt. Unlike *Rosales*, there is no need for a separate factual inquiry into the knowledge of Cappelli as to each particular class member's information. *Rosales*, 2008 WL 4976223 at *3. Cappelli's knowledge as to the accuracy of the records, or lack thereof, is uniform across the class.

*Defenses*

Last, Defendants argue that many defenses could apply to particular class members but not others, thus precluding class certification. One of their arguments rests on the admissibility of the affidavits in particular courts. The proposed class is for individuals living in Illinois, so there would be no factual variation between different states. Defendants also argue that some claims are precluded by the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, lower federal courts are precluded "from applying appellate review to state court decisions." *Epps v. Creditnet, Inc.*, 320 F.3d 756, 759 (7th Cir. 2003). However, "[t]he *Rooker-Feldman* doctrine applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). A debt collector

---

records custodian under the business records exception. Records may be admitted under Federal Rules of Evidence 806 (the business records exception) if: "(A) the record was made at or near the time by − or from information transmitted by − someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) *all these conditions are shown by the testimony of the custodian or another qualified witness*, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6) (emphasis added). As pled, Cappelli does not appear to be the custodian or another qualified witness and, thus, would be unable to testify about BOA's record keeping.

may injure a plaintiff under the FDCPA in a way that does not affect the underlying debt collection suit. *Id*. at 886. The injury alleged here is a violation of the FDCPA, not a state judgment; therefore, the *Rooker-Feldman* doctrine does not apply.

## CONCLUSION

For the reasons stated above, Plaintiff's Renewed Motion for Class Certification [114] is denied in part and granted in part. Plaintiff's Motion is granted as to proposed class I involving allegedly false Affidavits of Claim in lawsuits against individuals with Illinois addresses between September 11, 2011, and October 1, 2012, concerning a debt that was the subject of an "as is" disclaimer. Plaintiff's Motion is denied as to the other proposed classes.

Date:   September 29, 2015

JOHN W. DARRAH
United States District Court Judge